JAMES A. MC DEVITT
United States Attorney
Eastern District of Washington
TYLER H.L. TORNABENE
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV-10- |
| Plaintiff, | **UNITED STATES' COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT, AND COMMON LAW CAUSES OF ACTION** |
| vs. | |
| CURTIS T. HOLDEN, and ADVANCED PODIATRY SPECIALISTS P.S. | |
| Defendants. | **JURY TRIAL DEMANDED** |

The United States of America, through James A. McDevitt, United States Attorney for the Eastern District of Washington, and Assistant U.S. Attorney Tyler H.L. Tornabene, hereby alleges, avers, and claims against the above named Defendants as follows:

## I. JURISDICTION & VENUE

1.1   This civil action seeks the recovery of damages, civil penalties and disgorgement of monies obtained by Defendants CURTIS T. HOLDEN, and ADVANCED PODIATRY SPECIALISTS P.S. (hereinafter referred to collectively as

"the Defendants" where appropriate), as a result of violations of the federal False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*, and for other violations of the common law that support causes of action for payment by mistake, unjust enrichment, and/or other legal and equitable remedies that are available to this Court.

1.2   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345, 1331, and 31 U.S.C. § 3732(a).

1.3   Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and 3732(a). At all times material hereto, it is believed that the Defendants were located in and transacted business in the Eastern District of Washington.

## II.   PARTIES

2.1   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 1.3 of this Complaint.

2.2   The Plaintiff is the UNITED STATES, which brings this action on behalf of the principal government agency victimized by the Defendants' false claims, the United States Department of Health and Human Services.

2.3   Defendant CURTIS T. HOLDEN (hereinafter referred to as "HOLDEN") is believed to reside in or near Yakima, Washington, in the Eastern District of Washington.

2.4   Defendant ADVANCED PODIATRY SPECIALISTS P.S. (hereinafter referred to as "ADVANCED PODIATRY") is a Washington corporation whose principal place of business is in Yakima, Washington. ADVANCED PODIATRY provides podiatric medical services in the Yakima and Sunnyside, Washington areas. ADVANCED PODIARTY's registered agent is HOLDEN and HOLDEN is believed to be its sole owner.

## III.   FACTS

3.1   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 2.4 of this Complaint.

3.2   At all times relevant to this Complaint, HOLDEN was licensed as a podiatric physician and surgeon in the State of Washington.

## FALSE MEDICARE CLAIMS

3.3   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 3.2 of this Complaint.

3.4   At all times relevant to this Complaint, HOLDEN, and two other licensed podiatrists employed at ADVANCED PODIATRY, Dr. Michael Lee and Dr. Troy N. Morton, were medical providers with Medicare.

3.5   Medicare is a federal program administered, pursuant to 42 U.S.C. § 1395 *et. séq.*, by the United States Department of Health and Human Services (hereinafter referred to as "DHHS" where appropriate) through which the UNITED STATES pays for all or a portion of medical benefits provided to eligible beneficiaries by eligible medical providers.

3.6   DHHS pays for the medical benefits provided to eligible beneficiaries based on claims, provided on forms commonly known as Health Insurance Claim Form 1500, (hereinafter referred to as "HCFA 1500 forms"), submitted by the eligible medical providers.

3.7   HCFA 1500 forms require eligible medical providers to document, or cause to be documented, material information including CPT codes that represent the type of service actually provided to a given eligible beneficiary on a given date.  CPT codes translate medical services and procedures into numeric and alphanumeric codes to facilitate universal insurance billing.

3.8   DHHS uses the CPT codes and other material information provided by eligible medical providers on the HCFA 1500 forms to determine the amount to pay an eligible medical provider for services rendered to eligible beneficiaries.

3.9   At all times relevant to this Complaint, HOLDEN forwarded the billing information, which included CPT codes, to the ADVANCED PODIATRY billing

department which then transferred that data directly to HCFA 1500 forms and submitted them for payment to DHHS.

3.10 At all times relevant to this Complaint, HOLDEN was directly responsible for approving all CPT codes billed at ADVANCED PODIATRY, including those submitted by Dr. Michael Lee and Dr. Troy N. Morton.

3.11 Between approximately July 1, 2004, and August 2, 2007, HOLDEN caused HCFA 1500 forms to be submitted to DHHS, which contained materially false information, including CPT codes, for services that were not provided.

3.12 Between approximately July 1, 2004, and August 2, 2007, HOLDEN caused to be submitted HCFA 1500 forms to DHHS, which contained materially false information, including CPT codes, for services which billed at a higher rate than the service actually provided.

3.13 Had DHHS known that the HCFA 1500 forms submitted from ADVANCED PODIATRY were false, it would not have authorized or approved the payment of the claims with federal funds.

3.14 The Western Integrity Center, a program safeguard contractor for DHHS, (hereinafter referred to as "WIC") conducted a statistically valid and random sampling of eligible Medicare beneficiaries' HCFA 1500 forms for services supposedly provided by HOLDEN, Dr. Lee, and Dr. Morton between July 1, 2004, and August 2, 2007, and paid by DHHS, as well as the documentation used to support the data in the HCFA 1500 forms.

3.15 Utilizing standard and accepted statistical methodology, WIC determined, with 95% confidence, that DHHS overpaid ADVANCED PODIATRY at least $641,690.00 based on HCFA 1500 forms submitted to DHHS between July 1, 2004, and August 2, 2007, falsely claiming that HOLDEN, Dr. Lee, and Dr. Morton had provided certain medical services to eligible Medicare beneficiaries when in fact no such services had been provided.

3.16  HOLDEN submitted or caused to be submitted false HCFA 1500 forms causing DHHS to overpay ADVANCED PODIATRY in addition to those HCFA 1500 forms examined in the statistical sample utilized by WIC.

3.17  For example, on or after January 6, 2006, HOLDEN submitted or caused to be submitted 17 separate HCFA 1500 forms falsely claiming evaluation and management visits for eligible Medicare beneficiaries at Garden Village, a skilled nursing facility, when, in fact, evaluation and management visits were not provided.

3.18  As a result of the HCFA 1500 forms submitted regarding supposed evaluation and management visits to eligible Medicare beneficiaries supposedly occurring on January 6, 2006, at Garden Village, DHHS overpaid ADVANCED PODIATRY $922.41.

3.19  Additionally, by way of further example, on or after April 20, 2007, HOLDEN submitted or caused to be submitted 23 separate HCFA 1500 forms falsely claiming evaluation and management office visits for eligible Medicare beneficiary J.L. when, in fact, evaluation and management office visits were not provided.

3.20  As a result of the HCFA 1500 forms for eligible Medicare beneficiary J.L., for services supposedly provided between February 12, 2007, and April 20, 2007, DHHS overpaid ADVANCED PODIATRY $1,347.30.

3.21  Additionally, by way of further example, on or after November 14, 2006, HOLDEN submitted or caused to be submitted three separate HCFA 1500 forms falsely claiming to have provided the surgical procedures of Metatarsectomy, Ostectomy, and, Incision & Drain/multiple areas, for eligible Medicare beneficiary W.S., when, in fact, these procedures were not provided.

3.22  As a result of the HCFA 1500 forms for eligible Medicare beneficiary W.S., for services supposedly provided between August 30, 2006, and November 14, 2006, DHHS overpaid ADVANCED PODIATRY $949.71.

3.23 Additionally, by way of further example, on or after January 3, 2006, HOLDEN submitted or caused to be submitted two separate HCFA 1500 forms falsely claiming two durable medical equipment items, a left and a right walking boot, for eligible Medicare beneficiary B.B., when, in fact, these items were not provided.

3.24 As a result of the HCFA 1500 forms for eligible Medicare beneficiary B.B., for durable medical equipment items supposedly provided on January 3, 2006, DHHS overpaid ADVANCED PODIATRY $199.32.

3.25 Additionally, by way of further example, on or after February 27, 2007, HOLDEN submitted or caused to be submitted four separate HCFA 1500 forms falsely claiming to have provided eligible Medicare beneficiary M.L. with the service of "nail excision" (matrixectomy), when, in fact, nail excisions (matrixectomies) were not provided.

3.26 As a result of the HCFA 1500 forms for eligible Medicare beneficiary M.L., for services supposedly provided on February 27, 2007, DHHS overpaid ADVANCED PODIATRY $244.76.

3.27 Additionally, by way of further example, on or after January 25, 2006, HOLDEN submitted 18 separate HCFA 1500 forms falsely claiming evaluation and management office visits for eligible Medicare beneficiary L.W., when in fact evaluation and management office visits were not provided.

3.28 As a result of the HCFA 1500 forms for eligible Medicare beneficiary L.W., for services supposedly provided between November 30, 2005, and January 25, 2006, DHHS overpaid ADVANCED PODIATRY $777.56.

3.29 Additionally, by way of further example, on or after February 14, 2007, HOLDEN submitted or caused to be submitted seven separate HCFA 1500 forms falsely claiming to have provided eligible Medicare beneficiary W.F. with nail avulsions when in fact nail avulsions were not provided.

3.30  As a result of the HCFA 1500 forms for eligible Medicare beneficiary W.F., for services supposedly provided between December 14, 2005, and February 14, 2007, DHHS overpaid ADVANCED PODIATRY $366.32.

## FALSE MEDICAID CLAIMS

3.31  The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 3.30 of this Complaint.

3.32  Under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, the UNITED STATES shares with the fifty States the cost of medical services provided to indigent families with dependent children, and to aged, blind, and disabled individuals whose income and resources are insufficient to meet the cost of medical services. This program is commonly referred to as Medicaid.

3.33  Medicaid is a federally assisted grant program for the states, funding for Medicaid is shared between the UNITED STATES and those state governments that have chosen to participate in the program. In the State of Washington, the Medicaid program is funded with approximately, on average for times relevant to this Complaint, 51% federal funds and approximately 49% state funds. At all times relevant to this Complaint, Medicaid rules were substantially similar in all material respects to those of the Medicare program.

3.34  The Health and Recovery Services Administration (hereinafter referred to as "HRSA"), which is a sub-agency of the Washington State Department of Social and Health Services, administers the Medicaid program in the state of Washington. Within broad federal rules, HRSA decides who is eligible for Medicaid, the services covered, payment levels for services, and administrative and operation procedures. HRSA directly pays providers, with the state of Washington obtaining the federal share of the payment from accounts which draw on funds of the United States Treasury. 42 C.F.R. §§ 430.0-430.30 (1994).

3.35  At all times relevant to this complaint, the UNITED STATES provided funds to the State of Washington through the Medicaid program as administered by HRSA, pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*.

3.36  Enrolled providers of medical services to Medicaid recipients are eligible for reimbursement for covered services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.

3.37  By becoming a participating provider in Medicaid, enrolled providers agree to abide by the rules, regulations, policies and procedures governing reimbursement, and to keep and allow access to records and information as required.

3.38  In order to receive Medicaid funds, enrolled providers located in the state of Washington, together with authorized agents, employees, and contractors are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures issued by the state of Washington.

3.39  At all times relevant to this Complaint, HOLDEN, Dr. Michael Lee, and Dr. Troy N. Morton, were enrolled Medicaid providers located in the state of Washington.

3.40  At all times relevant to this Complaint, HOLDEN forwarded the billing information, which included CPT codes, for Medicaid claims to the ADVANCED PODIATRY billing department which then transferred that data directly to HCFA 1500 forms. The HCFA 1500 forms were then submitted for payment to HRSA.

3.41  At all times relevant to this Complaint, HOLDEN was directly responsible for approving all CPT codes billed to HRSA at ADVANCED PODIATRY, including those submitted by LEE and Dr. Morton.

3.42  Between approximately June 1, 2004, and May 31, 2007, HOLDEN submitted or caused to be submitted false HCFA 1500 forms to HRSA for services that

were not provided. As a result, the UNITED STATES paid for a portion of the false claims.

3.43    Between approximately June 1, 2004, and May 31, 2007, HOLDEN submitted or caused to be submitted false Medicaid claims to HRSA for services which billed at a higher rate than the service actually provided. As a result, the UNITED STATES paid for a portion of the false claims.

3.44    Had the UNITED STATES known that the HCFA 1500 forms submitted from ADVANCED PODIATRY, on which the State of Washington paid, were false, the UNITED STATES would not have authorized or approved the corresponding payments of federal funds.

3.45    HRSA conducted a payment review and audit of patient files based on a statistical sampling of all HCFA claims submitted from ADVANCED PODIATRY to HRSA for services claimed to have been provided by HOLDEN, Dr. Lee, and Dr. Morton, to eligible Medicaid beneficiaries between June 1, 2004, and May 31, 2007.

3.46    Based on the review of patient files and utilizing standard and accepted statistical methodology, HRSA determined, with 95% confidence, that it overpaid ADVANCED PODIATRY at least $117,279.00, $59,812.29 of which (approximately 51%) was provided by the UNITED STATES.

3.47    The UNITED STATES' portion of the Medicaid overpayment to ADVANCED PODIATRY was based on the false HCFA 1500 forms submitted from ADVANCED PODIATRY to HRSA between June 1, 2004, and May 31, 2007, falsely claiming that HOLDEN, Dr. Lee, and Dr. Morton had provided certain medical services to eligible Medicaid beneficiaries when in fact no such services had been provided.

3.48    For example, on or after February 27, 2007, HOLDEN submitted or caused to be submitted four HCFA 1500 forms falsely billing services to eligible Medicaid beneficiary M.L. as follows:

| DATE | CPT CODE BILLED |
|---|---|
| 2/27/07 | CPT 11750 (excision of nails/LT big toe) |
| 2/27/07 | CPT 11750 (excision of nails/ LT 5th toe) |
| 2/27/07 | CPT 11750 (excision of nails/ RT big toe) |
| 2/27/07 | CPT 11750 (excision of nails/ RT 2nd toe) |

when in fact, excisions of nails were not provided to eligible Medicaid beneficiary M.L.

3.49   As a result of these HCFA 1500 forms for eligible Medicaid beneficiary M.L., HRSA overpaid ADVANCED PODIATRY $244.76.

3.50   As a result of these HCFA 1500 forms for eligible Medicaid beneficiary M.L., the UNITED STATES reimbursed HRSA $125.84 (approximately 51%) of the $244.76 it overpaid ADVANCED PODIATRY.

### IV.   FALSE CLAIMS ACT- FALSE CLAIMS

4.1   The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 3.50 of this Complaint.

4.2   By virtue of the above described acts, from June 1, 2004, through August 2, 2007, the Defendants knowingly presented or caused others to present, to an officer, employee or agent of the UNITED STATES, false or fraudulent claims to obtain payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

4.3   The Defendants had actual knowledge that the information in Defendants' HCFA 1500 forms, submitted to DHHS and HRSA, were false. Alternatively, Defendants acted in deliberate ignorance of the truth or falsity of the information in the HCFA 1500 forms and/or acted in reckless disregard of the truth or falsity of the information in the HCFA 1500 forms they submitted and/or conspired among themselves or with others to defraud the UNITED STATES by getting false or fraudulent HCFA 1500 forms allowed or paid.

4.4   The UNITED STATES paid the false or fraudulent claims due to the unlawful and false acts of the Defendants and, as a result, the UNITED STATES

currently believes it has incurred actual damages in the minimum amount of $701,502.29, the actual amount (exclusive of interest and costs) will be proven at the time of hearing and/or trial.

4.5 Pursuant to the False Claims Act, including 31 U.S.C. § 3729, as adjusted by 28 CFR 85.3(a)(9), the Defendants are jointly and severally liable to the UNITED STATES for the principal amount paid as a result of the false claims, for a civil penalty in the amount of treble damages (a minimum amount of $2,104,506.87) on the false claims and for an additional civil penalty of not less than $5,500 and not more than $11,000, for each of the Defendants' false or fraudulent certifications and claims.

4.6 The Defendants committed these unlawful acts individually, jointly, and/or in conspiracy with each other, and/or other participants in the fraudulent scheme.

## V. PAYMENT MADE BY MISTAKE

5.1 The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 4.6 of this Complaint.

5.2 The UNITED STATES made payments to the Defendants under the erroneous belief that the Defendants' claims and certifications were based on representations that were factually accurate and represented actual services to eligible Medicare and Medicaid beneficiaries.

5.3 The UNITED STATES' erroneous belief was material and Defendants improperly received monies for which they were not entitled to receive.

5.4 By reason of the scheme described above, the UNITED STATES is entitled to damages in the minimum amount of $701,502.29, and such other and further sums that will be proven at the time of hearing or trial.

## VI. UNJUST ENRICHMENT

6.1 The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 5.4 of this Complaint.

6.2    The Defendants have been unjustly enriched.  As a result of the facts alleged in this Complaint, the Defendants have received and have continued to maintain control over monies to which the Defendants are not entitled to retain and unlawfully deprived the UNITED STATES of monies owed it.

6.3    By obtaining funds owed to the UNITED STATES that Defendants were not entitled, Defendants were unjustly enriched and they are therefore liable to account and pay to the UNITED STATES such unjustly received amount which the UNITED STATES currently believes to be at least $701,502.29, or such actual amount that will be proven at the time of hearing or trial.

## VIII. <u>FRAUD</u>

7.1    The UNITED STATES re-alleges and incorporates by reference paragraphs 1.1 through 6.3 of this Complaint.

7.2    The Defendants made representations of existing facts.

7.3    The Defendants' factual representations were material.

7.4    The Defendants' factual representations were false.

7.5    The Defendants' had knowledge of the falsity of their factual representations.

7.6    The Defendants' intended that the UNITED STATES should act on their materially false factual representations.

7.7    The UNITED STATES was ignorant of the falsity of the Defendants' factual representations.

7.8    The UNITED STATES justifiably relied on the truth of the Defendants' materially false factual representations.

7.9    The UNITED STATES had a right to rely upon the Defendants' factual representations.

7.10  As a consequence of the Defendants' materially false factual representations, the UNITED STATES was damaged in the minimum amount of $701,502.29, or such actual amount that will be proven at the time of hearing or trial.

## PRAYER FOR RELIEF

WHEREFORE, the UNITED STATES prays for judgment and the following relief against the Defendants:

1. Judgment against the Defendants in the minimum amount of $701,502.29 for false claims to the UNITED STATES, or for such amount that will be proven at hearing and/or time of trial, for the Defendants' violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

2. For a civil penalty of treble damages in the minimum amount of $2,104,506.87 (three times the minimum amount of $701,502.29) or for such treble damages based on the actual damages proven at hearing and/or trial, for the Defendants' violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

3. For an additional civil penalty of not less than $5,500 and not more than $11,000, for each of the Defendants' false or fraudulent claims, for the Defendants' violation of the federal False Claims Act, 31 U.S.C. §§ 3729-3733;

4. Judgment against the Defendants in the minimum amount of $701,502.29 for damage to the UNITED STATES resulting from payment by mistake to, unjust enrichment of, and fraud committed by, the Defendants.

5. For pre and post-judgment interest on all damages;

6. For the UNITED STATES' investigation costs and fees, as well as the UNITED STATES' reasonable attorney's fees and other costs as allowed or otherwise recoverable under the court rules and/or any other applicable federal statute, code, or regulation; and for

//

7. Such other and further legal and for equitable relief that the Court deems just and equitable in the case.

RESPECTFULLY SUBMITTED this 30th day of June, 2010.

JAMES A. MCDEVITT
U.S. Attorney–Eastern Dist. Of Washington

*/s/ Tyler Tornabene*

TYLER H.L. TORNABENE,
Assistant United States Attorney
United States Attorney's Office
P.O. Box 1494
Spokane, WA 99210-1494
Phone: 509-353-2767
Fax: 509-353-2766
USA-WAE-Ttornabene@usdoj.gov

UNITED STATES' COMPLAINT FOR VIOLATION OF FALSE CLAIMS
ACT, COMMON LAW CAUSES OF ACTION, AND JURY TRIAL DEMAND  Page 14